**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FT. MYERS DIVISION**

**ERIN GILL,**                                          **CASE NO.:**

      **Plaintiff,**

**v.**

**GREATER NAPLES FIRE**
**RESCUE DISTRICT,**

      **Defendant.**

_____/

## COMPLAINT

Plaintiff, ERIN GILL, hereby sues Defendant, GREATER NAPLES FIRE RESCUE DISTRICT, and alleges:

## NATURE OF THE ACTION

1.     This is an action brought under the Florida Civil Rights Act, codified at Chapter 760, Florida Statutes, 42 U.S.C. §2000e et seq. and 42 U.S.C. §12101 et seq.

2.     This action involves claims which are, individually, in excess of Seventy Five Thousand Dollars ($75,000.00), exclusive of costs and interest.

## THE PARTIES

3.     At all times pertinent hereto, Plaintiff, ERIN GILL, has been a resident of the State of Florida and was employed by Defendant. Plaintiff is a member of a protected class due to her gender, sexual orientation, actual and/or

perceived disability and/or record of having an impairment, and she was retaliated against after reporting Defendant's unlawful employment practices.

4.      At all times pertinent hereto, Defendant, GREATER NAPLES FIRE RESCUE DISTRICT, has been organized and existing under the laws of the State of Florida. At all times pertinent to this action, Defendant has been an "employer" as that term is used under the applicable laws identified above. Defendant was Plaintiff's employer as it relates to these claims.

## CONDITIONS PRECEDENT

5.      Plaintiff has satisfied all conditions precedent to bringing this action, if any.

## STATEMENT OF THE ULTIMATE FACTS

6.      Plaintiff, a gay female, began her employment with Defendant in Florida on or about October 1, 2012, as a firefighter.  She was promoted to Engineer in 2017 and to Lieutenant in November, 2021, a position she held until her wrongful termination on June 6, 2025.

7.      Plaintiff was a loyal and dedicated employee with a Tenzinga performance management system rating of "Above Standards."

8.      Despite her work performance during her employment with Defendant, Plaintiff was subjected to disparate treatment, different terms and conditions of employment, and held to a different standard due to her gender

2

and/or sexual orientation, her actual and/or perceived disability and/or record of having an impairment, and because she reported Defendant's unlawful employment activities and was subject to retaliation thereafter.

9.     The disparate treatment and retaliation came at the hands of, including but not limited to, Fire Chief Nolan Sapp, Fire Chief Chris Wolfe, Assistant Fire Chief Josh Bauer, Assistant Fire Chief Forrest Campbell, Emergency Medical Services Chief Dennis DiSarro, Human Resources ("HR") Director Janice Montegudo, Battalion Chief Chris Rossi, Battalion Chief Matt Nixon, Battalion Chief Ben Krick, Engineer Justin Diaz, Lieutenant Ray Kilmer, Logistics Chief Mark Stirns, Michelle Ughi, Local 2396 and its Board members (past and present), and Local 2396 Attorney Marcus Braswell.

10.     On or about June 10, 2022, Plaintiff formally requested a light-duty assignment after sustaining an injury to her calf while representing Defendant in the First Responder Softball Games. The treatment of this injury required months of physical therapy as well as use of a boot and crutches. Plaintiff was unable to bear weight on her injured leg during the recovery period. Monteagudo, Sapp, Battalion Chief Chris Diaz, and representatives of Local 2396 were aware of Plaintiff's request for light duty. However, Defendant denied the accommodation claiming Defendant could not justify paying Plaintiff "for answering phones" and that light-duty assignments would be granted only for on-duty injuries.

11.  After her injury and requests for accommodations, Plaintiff was treated differently than similarly situated male employees who received modified schedules and alternative assignments when medically restricted. Defendant further failed to engage in any good-faith interactive process to identify a reasonable accommodation for Plaintiff. By way of example, Defendant approved and created a light-duty assignment for Battalion Chief Aaron Fly, male, even though other personnel were already performing the duties assigned to him.

12.  On September 12, 2022, Plaintiff reported to Monteagudo and Campbell that Captain Jason Sellers, male, a supervisor reporting to Diaz and an indirect supervisor to Plaintiff, engaged in hostile and undermining conduct interfering with Plaintiff's ability to perform supervisory duties. Plaintiff, one of Defendant's only female officers, reported that Sellers berated her in front of personnel, spoke disparagingly about her to coworkers, withheld required promotional training, refused shift-turnover information, and created a work environment not directed at her male counterparts. Plaintiff reasonably believed this conduct was motivated, at least in part, by her gender and/or sexual orientation and reported same as unlawful discrimination and harassment. Around the same time, Sellers phoned Plaintiff while she was on duty, raised his voice at her on speakerphone in front of others, and continued the behavior she had reported. After

4

Plaintiff elevated her concerns to HR and to her supervisor, she was instructed to issue a written directive for Sellers to cease the conduct.

13. On December 12, 2022, Plaintiff sent the written directive to cease his abusive behavior, approved by Campbell and Monteagudo, to Sellers. No meaningful action was taken despite Plaintiff following Defendant's instructions, further demonstrating Defendant's failure to remedy known discriminatory and hostile conduct.

14. Rather than correct a known problem with the abusive behavior towards Plaintiff, she was the victim of ongoing discrimination thereafter based on her gender/sexual orientation and to retaliation for exposing Sellers abusive conduct.

15. On December 18, 2022, six days after Plaintiff sent her directive to Sellers, Plaintiff attempted to address ongoing workplace issues with Justin Diaz, a male subordinate to Plaintiff who had repeatedly resisted Plaintiff's supervisory direction following her promotion in November 2021 to Lieutenant. Plaintiff told Justin Diaz he had become "unteachable" and had "plateaued," and that if he wanted a successful career, he needed to stop undermining those trying to assist him.

16. In response, Justin Diaz raised his voice, used profanity, and displayed aggressive behavior toward Plaintiff, prompting her to end the exchange

and return inside the station. Nixon was assigned to investigate and, with Battalion Chief Corey Nelson, male, took statements from others and briefly questioned Plaintiff. Plaintiff was not permitted to document her account before Justin Diaz filed a contrived hostile-work-environment complaint against her.

17.     On January 5, 2023, Defendant issued Plaintiff a Written Reprimand following Nixon's investigation into the Justin Diaz incident. Even though Defendant later determined Plaintiff was "not guilty" of the allegation, the written discipline remained in her file, causing continuing harm to her employment status and serving as a pretextual basis for subsequent adverse employment actions. Diaz was never disciplined for his insubordination towards Plaintiff as his supervisor.

18.     On March 1, 2023, Plaintiff received a Written Counseling Form for alleged "Insubordination" after directing the closest unit to respond to an emergency call. At the time, the CAD/GPS tablet at Station 75 was inoperable despite Plaintiff's repeated reports about its disfunction, and Plaintiff followed Battalion Chief Craig Weinbaum's, male, directive for handling such situations. Plaintiff has audio recordings of male officers calling for the closest available unit under similar circumstances. Nevertheless, Rossi issued discipline. Male officers who engaged in comparable conduct, including Justin Diaz, were not disciplined.

19.     On April 12, 2023, Plaintiff received a Written Counseling Form for "Poor Performance" after her crew allegedly missed a training session that had

been removed from, and later re-added to, the CrewSense scheduling system. Plaintiff checked the system the night before and again the morning of her shift. The training did not appear at either time. After Rossi telephoned Plaintiff mid-morning, Plaintiff immediately reported to the training site, yet Rossi issued discipline. Male officers who missed or misunderstood last-minute schedule changes were not disciplined.

20.    By way of example, Lieutenant Brad Butzcho, male, failed to check the schedule and reported to the wrong station for training, causing a domino effect that left multiple units out of service. No discipline was issued. Similarly, on April 13, 2023, the day after Plaintiff was disciplined, Lieutenant Anthony Palermo, male, on Engine 75 failed to check the schedule and completely missed training. Battalion Chief Aaron Fly, male, told Palermo not to worry about it and issued no discipline.

21.    On May 14, 2023, while serving as Lieutenant on Engine 75, Plaintiff contacted Firefighter Corey Nielsen, male, after Engine 75 was repeatedly dispatched outside its zone due to an ongoing GPS malfunction. Plaintiff briefly inquired whether Squad 70 had been instructed not to take certain calls, and no one reported that Plaintiff told Squad 70 to "take Engine 75's calls." Defendant later used this allegation to initiate an investigation falsely accusing Plaintiff of directing another unit to take calls assigned to her.  This investigation was

motivated by gender discrimination and retaliation for her protected complaints of discrimination, harassment, and unequal treatment.

22. That same day, Plaintiff arrived at Station 70 and observed Firefighter William Wilkie, male, wearing shorts. In a light-hearted tone, Plaintiff asked whether he had "been written up for wearing shorts yet," and Wilkie replied that the policy had changed. No witness reported hostility or unprofessional conduct; nevertheless, Rossi initiated a separate investigation into this benign exchange, further evidencing heightened and disparate scrutiny directed at Plaintiff based on her gender.

23. On May 18, 2023, Plaintiff was scheduled for a swap shift and notified Rossi that she could not report due to urgent post-surgical care needs of her partner at home who had recently undergone surgery on her Anterior Cruciate Ligament (ACL). This surgery rendered Plaintiff's partner temporarily unable to perform essential life functions, such as standing and walking. Plaintiff's need for leave was related to medical circumstances and/or her association with an individual with a disability. Despite this, Defendant launched a full-scale investigation into her absence, questioning who, what, where, and why Plaintiff called out.

24. In the preceding six months, more than 60 employees called in sick on swap days, some four or five times, with no investigation or discipline. Plaintiff

maintained a calendar documenting these occurrences. By way of example, a male firefighter on Engine 20 called out sick on a swap day with no investigation and no discipline. The investigation into Plaintiff's single absence reflected disparate treatment based on gender and disability and/or perceived disability and association with a disabled individual.

25.     On June 9, 2023, after repeated unsuccessful attempts to meet with Rossi to address escalating workplace concerns, Plaintiff requested a meeting with Fire Chief Nolan Sapp to seek guidance and support. Plaintiff informed Sapp that she had received multiple disciplinary actions in a short period of time and sought mentoring or direction. HR representative Deborah Pittman, female, was present. Plaintiff raised concerns about disparate treatment based on her gender and retaliation following her prior complaints and later memorialized the conversation in an email to Sapp and Pittman on June 12, 2023.  Sapp stated during this meeting that he was unaware of what was happening but would "fix it" and that Plaintiff would be wearing the next "Chief" badge.

26.     On June 12, 2023, Plaintiff sent an email to HR detailing the hostile work environment and retaliation that she feared if she came forward with all of the information she had to support her case.  She also reported that certain firefighters were forced to make allegations against Plaintiff for an incident that

never occurred.  No investigation was conducted of Plaintiff's complaints and HR never asked for the documentation Plaintiff said she had to support her claims.

27.     On June 14, 2023, within days of engaging in protected activity, Plaintiff was placed on administrative leave. Two days later, Monteagudo issued a Formal Investigation Notice alleging three violations from the May incidents: (1) directing another unit to take a closer call on three occasions; (2) acting in a hostile manner toward Wilkie on May 14, 2023; and (3) calling in sick while working a swap on May 18, 2023. Plaintiff had already disputed each allegation and understood the matters to be resolved at the time.

28.     By this time, Plaintiff was experiencing severe anxiety, depression, panic attacks, difficulty concentrating, sleeplessness, weight gain, and significant forgetfulness during the period in which she was subjected to escalating investigations and disciplinary actions. These conditions substantially limited one or more major life activities, including but not limited to sleeping, concentrating, and working, and therefore constitute a disability within the meaning of applicable law.  She was diagnosed with PTSD as of July 21, 2023 but exhibited symptoms as early as November, 2022.  Notwithstanding her disabling conditions, she was able to perform the essential functions of her position with Defendant with and/or without accommodations.

29.     Because of these conditions, on July 5, 2023, Plaintiff's physician took her out of work and she remained out of work until on leave under the Family and Medical Leave Act (FMLA) and short term disability around February 6, 2024.  Shortly after Plaintiff went out on disability leave on July 5, 2023, she filed her first charge of discrimination with the EEOC alleging gender and disability discrimination and retaliation around July 5, 2023.

30.     Plaintiff sought mental-health treatment regularly as a result of her conditions.  She also completed required mental-health forms including FMLA and short term disability forms to take time off and to advise Defendant as to the nature of her disabling conditions.

31.     Upon Plaintiff's return to work, the investigation was still ongoing.

32.     On April 30, 2024, Plaintiff's attorney, Geralyn Noonan, submitted findings to Defendant regarding the allegations. Despite those findings, on June 12, 2024, Bauer issued discipline, resulting in Plaintiff's demotion by two ranks, a shift change, a significant reduction in pay, and a requirement that Plaintiff sign a Last Chance Agreement.

33.     Plaintiff included the following statement on the agreement: "Respectfully, I am signing this Last Chance Agreement not because I agree with the allegations asserted herein, but because the Defendant requires me to sign this

11

document to continue in their employ. I am complying with their directive and continue to fully support the District's mission and the citizens it serves."

34.    On one occasion, Battalion Chief Kevin Schoch, came to Plaintiff's home during a mental-health crisis. Plaintiff was afraid to use the Employee Assistance Program because Plaintiff believed Defendant would view her as unable to perform her duties and that doing so would jeopardize her employment.

35.    On June 25, 2024, Plaintiff filed a grievance with Grievance Committee Chair Tom Szempruch, challenging the prior discipline referenced above including without limitation her double demotion. Shortly thereafter, Plaintiff received a Notice of Formal Investigation alleging Plaintiff "knowingly and intentionally falsified a document," referring to the Grievance, in which she was alleged to have falsified the time and date of filing the Grievance.  This allegation, again, was false.  Plaintiff signed and dated the fourth page of the Grievance rather than the first page and Defendant claimed that this was the falsification of a document, which was common practice within Defendant.  If there was a clerical correction that was needed, rather than returning the document for clerical correction, the matter advanced to formal investigation, further evidencing retaliatory escalation following Plaintiff's protected conduct.

36.    On or around August 26, 2024, Plaintiff filed her second charge of discrimination alleging discrimination on the basis of sex and disability and retaliation.

37.    On August 31, 2024, Plaintiff's grievance was denied by Chief Wolfe which meant that she advanced to the next step in the grievance process.

38.    On February 7, 2025, Plaintiff participated in mediation as the next step in the grievance process before Mediator Scott Setzer, with Defendant's representatives, including Wolfe, HR personnel, and command staff. The parties agreed that Plaintiff would be reinstated one rank, permitted to retest for the Lieutenant position, have prior discipline rescinded, and receive a list of required coursework within 30 days or reconvene in mediation.

39.    However, despite repeated requests by both Plaintiff and her attorney, Defendant failed to provide the required coursework within 30 days and did not provide it until May 29, 2025.

40.    That day, on May 29, 2025, Plaintiff met with Defendant representatives to finalize the agreement and obtain the coursework, which Plaintiff and her counsel had repeatedly requested. Wolfe presented a schedule extending beyond the timeframe agreed upon in mediation and later disputed the pay step increase previously ratified in mediation.

13

41. One of the conditions of the mediation was that Plaintiff withdraw her charges of discrimination.

42. Despite Plaintiff submitting withdrawal forms on May 29, 2025 to her attorney, which were filed with the EEOC on May 30, 2025, Defendant claimed Plaintiff missed the deadline, while Wolfe unilaterally refused to return to mediation, which was an agreed upon term of the agreement, and failed to implement the terms of the mediated agreement. Plaintiff stated her expectation of fair dealing and reserved the right to reinstate her EEOC charges if the pattern of conduct against her continued.

43. Before Plaintiff DocuSigned the withdrawals on May 29, 2025, discussed below, while at Station 70, Plaintiff was informed by Campbell, Nelson, and HR personnel that she was the subject of a new Formal Investigation, which appeared to be related to her prior EEOC activity. The allegation was that Plaintiff really had no intention of withdrawing her charges and that she was taunting and cussing at HR and Wolfe, which was not true. Other false allegations were made against her as well. At that time, Plaintiff was relieved of duty and directed to go home. Following this incident, and upon the recommendation of her Intensive Outpatient Program providers, Dawn McCarty and Doug Hodges, Plaintiff enrolled in treatment and attended three-hour therapy sessions three times per week.

14

44.     The stated basis for the investigation was that Plaintiff failed to withdraw her EEOC charges within three days of signing the Settlement Agreement. However, Plaintiff's attorney, Geralyn Noonan, filed the withdrawal forms with the EEOC on May 22, 2025, within the required three-day window, and Plaintiff later completed the DocuSign confirmation on May 29, 2025. When Plaintiff was sent home on May 29, 2025, she was thereafter never permitted to return to work again except for her termination meeting. The investigation rested on a false premise and served as ongoing discrimination and retaliation against her for her protected EEOC activity.

45.     It is significant that Plaintiff was held to the letter of the law- the mediation agreement- while Defendant was in gross violation thereof with immunity.

46.     After returning home on May 29, 2025, Plaintiff was contacted by deputies from the Collier County Sheriff's Office, detained under Florida's Baker Act, and transported to the David Lawrence Center, where Plaintiff remained for six days. The detention followed statements Plaintiff made in the emotional aftermath of her termination and the prolonged pattern of adverse treatment that Plaintiff experienced in the workplace, underscoring both the sustained emotional harm Plaintiff suffered and Defendant's awareness of her resulting medical and

psychological vulnerability, yet Defendant failed to cease its discriminatory and retaliatory conduct.

47.    On June 4, 2025, Plaintiff received a Notice to Appear in connection with the new investigation, and on June 6, 2025, Plaintiff participated in a predetermination proceeding regarding the allegations. The hearing was largely a formality, as Defendant had predetermined the outcome. A Collier County Sheriff's Office vehicle was present for both the predetermination meeting and the termination meeting that followed later that same day, indicating Defendant anticipated or intended to immediately remove Plaintiff from the premises and demonstrating the termination decision had already been made and was not based on legitimate, non-discriminatory reasons but instead on unlawful discriminatory and retaliatory motives. Predetermination hearings and termination meetings are not typically, and in Plaintiff's experience, never, held on the same day. Plaintiff was not permitted to present evidence, question witnesses, or meaningfully respond to the allegations, and Defendant provided no explanation for departing from standard disciplinary procedures.

48.    In the termination meeting held June 6, 2025, Wolfe terminated Plaintiff's employment with Defendant. Those present included Bauer, Ughi, and Union Representative Lieutenant David Browski.

49.     Since Plaintiff's wrongful termination, Defendant has continued its retaliatory conduct by refusing to pay Plaintiff for her accrued leave benefits as promised.  Not one person identified above who were treated more favorably than Plaintiff is gay.

50.     Plaintiff has retained the undersigned to represent her interests in this cause and is obligated to pay a fee for these services. Defendant should be made to pay said fee under the laws referenced above.

## COUNT I
## GENDER DISCRIMINATION UNDER CHAPTER 760

51.     Paragraphs 1 through 50 are re-alleged and incorporated herein by reference.

52.     This is an action against Defendant for discrimination based upon gender brought under Chapter 760, Florida Statutes.

53.     Plaintiff has been the victim of discrimination on the basis of Plaintiff's gender in that Plaintiff was treated differently than similarly situated employees of the Defendant who are male and has been subject to disparate and poor treatment on the basis, at least in part, of Plaintiff's gender.

54.     Defendant is liable for the differential treatment and hostility towards Plaintiff because it controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and

17

inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.

55.     Furthermore, Defendant knowingly condoned and ratified the differential treatment of Plaintiff as more fully set forth above because it allowed the differential treatment and participated in same.

56.     Defendant's known allowance and ratification of these actions and inactions created, perpetuated and facilitated an abusive and offensive work environment within the meaning of the statutes referenced above.

57.     In essence, the actions of agents of Defendant, which were each condoned and ratified by the Defendant, were of a gender-based nature and in violation of the laws set forth herein.

58.     The discrimination complained of herein affected a term, condition, or privilege of Plaintiff's continued employment with Defendant. The events set forth herein led, at least in part, to Plaintiff's termination.

59.     Defendant's conduct and omissions constitutes intentional discrimination and unlawful employment practices based upon gender in violation of Chapter 760, Florida Statutes.

60.     As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, mental anguish, loss of enjoyment of life

18

and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits. These damages have occurred in the past, are permanent and continuing. Plaintiff is entitled to injunctive/equitable relief.

## COUNT II
## GENDER (SEXUAL ORIENTATION) DISCRIMINATION UNDER 760

61.   Paragraphs 1 through 50 are re-alleged and incorporated herein by reference.

62.   This count sets forth a disparate treatment claim against Defendant for gender (sexual orientation) discrimination under Chapter 760, Florida Statutes.

63.   Plaintiff has been the victim of discrimination on the basis of her gender/sexual orientation in that Plaintiff was treated differently than similarly situated employees of Defendant and subjected to hostility and poor treatment on the basis, at least in part, of her gender/sexual orientation.

64.   Moreover, the offensive comments and actions taken against Plaintiff were offensive, repetitive, severe and pervasive and adversely affected Plaintiff's ability to perform her job duties with Defendant.

65.   Defendant is liable for the differential treatment and hostility towards Plaintiff because it controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and

19

inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.

66. Furthermore, Defendant knowingly condoned and ratified the differential treatment of Plaintiff as more fully set forth above because it allowed the differential treatment and participated in same.

67. Defendant's known allowance and ratification of these actions and inactions actions created, perpetuated and facilitated an abusive or offensive work environment within the meaning of the statutes referenced above.

68. In essence, the actions of agents of Defendant, which were each condoned and ratified by Defendant, were of a gender/sexual orientation-based nature and in violation of the laws referenced above.

69. The discrimination complained of herein affected a term, condition, or privilege of Plaintiff's employment with Defendant.

70. The events set forth herein led, at least in part, to adverse actions against Plaintiff including but not limited to Plaintiff's wrongful termination.

71. Defendant's conduct and omissions constitutes intentional discrimination and unlawful employment practices based upon gender/sexual orientation in violation of the laws referenced above.

72. As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and

future pecuniary losses, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits. These damages have occurred in the past, are permanent and continuing. Plaintiff is entitled to injunctive/equitable relief.

**COUNT III**
**GENDER DISCRIMINATION UNDER 42 U.S.C. §2000e et seq**

73.    Paragraphs 1 through 50 are re-alleged and incorporated herein by reference.

74.    This is an action against Defendant for discrimination based upon gender brought under 42 U.S.C. §2000e et seq.

75.    Plaintiff has been the victim of discrimination on the basis of Plaintiff's gender in that Plaintiff was treated differently than similarly situated employees of the Defendant who are male and has been subject to disparate and poor treatment on the basis, at least in part, of Plaintiff's gender.

76.    Defendant is liable for the differential treatment and hostility towards Plaintiff because it controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.

77.    Furthermore, Defendant knowingly condoned and ratified the differential treatment of Plaintiff as more fully set forth above because it allowed the differential treatment and participated in same.

78.    Defendant's known allowance and ratification of these actions and inactions created, perpetuated and facilitated an abusive and offensive work environment within the meaning of the statutes referenced above.

79.    In essence, the actions of agents of Defendant, which were each condoned and ratified by the Defendant, were of a gender-based nature and in violation of the laws set forth herein.

80.    The discrimination complained of herein affected a term, condition, or privilege of Plaintiff's continued employment with Defendant. The events set forth herein led, at least in part, to Plaintiff's termination.

81.    Defendant's conduct and omissions constitutes intentional discrimination and unlawful employment practices based upon gender in violation of 42 U.S.C. §2000e et seq.

82.    As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay,

bonuses, and other benefits. These damages have occurred in the past, are permanent and continuing. Plaintiff is entitled to injunctive/equitable relief.

## COUNT IV
## GENDER (SEXUAL ORIENTATION) DISCRIMINATION UNDER
## 42 U.S.C. §2000e et seq.

83. Paragraphs 1 through 50 are re-alleged and incorporated herein by reference.

84. This count sets forth a disparate treatment claim against Defendant for gender (sexual orientation) discrimination under 42 U.S.C. §2000e et seq.

85. Plaintiff has been the victim of discrimination on the basis of her gender/sexual orientation in that Plaintiff was treated differently than similarly situated employees of Defendant and subjected to hostility and poor treatment on the basis, at least in part, of her gender/sexual orientation.

86. Moreover, the offensive comments and actions taken against Plaintiff were offensive, repetitive, severe and pervasive and adversely affected Plaintiff's ability to perform her job duties with Defendant.

87. Defendant is liable for the differential treatment and hostility towards Plaintiff because it controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and

inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.

88.    Furthermore, Defendant knowingly condoned and ratified the differential treatment of Plaintiff as more fully set forth above because it allowed the differential treatment and participated in same.

89.    Defendant's known allowance and ratification of these actions and inactions actions created, perpetuated and facilitated an abusive or offensive work environment within the meaning of the statutes referenced above.

90.    In essence, the actions of agents of Defendant, which were each condoned and ratified by Defendant, were of a gender/sexual orientation-based nature and in violation of the laws referenced above.

91.    The discrimination complained of herein affected a term, condition, or privilege of Plaintiff's employment with Defendant.

92.    The events set forth herein led, at least in part, to adverse actions against Plaintiff including but not limited to Plaintiff's wrongful termination.

93.    Defendant's conduct and omissions constitutes intentional discrimination and unlawful employment practices based upon gender/sexual orientation in violation of the laws referenced above.

94.    As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and

24

future pecuniary losses, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits. These damages have occurred in the past, are permanent and continuing. Plaintiff is entitled to injunctive/equitable relief.

## COUNT V
## DISABILITY DISCRIMINATION UNDER CHAPTER 760

95.    Paragraphs 1 through 50 are realleged and incorporated herein by reference.

96.    This is an action against Defendant for disability discrimination brought under Chapter 760, Florida Statutes.

97.    Plaintiff has been the victim of discrimination on the basis of her disability or perceived disability. During the course of Plaintiff's employment with Defendant, Plaintiff was treated differently than similarly situated nondisabled/perceived-as-disabled employees.

98.    Defendant is liable for the differential treatment of Plaintiff, which adversely affected the terms and conditions of Plaintiff's employment with Defendant. Defendant controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.

25

99.   In essence, the actions of agents of Defendant, which were each condoned and ratified by Defendant, were disability/perceived-disability based and in violation of the laws set forth herein.

100.   The discrimination complained of herein affected a term, condition, or privilege of Plaintiff's continued employment with Defendant. The events set forth herein lead, at least in part, to Plaintiff's termination.

101.   Defendant's conduct and omissions constitutes intentional discrimination and unlawful employment practices based upon disability or perceived disability or her record of having an impairment under the laws enumerated herein.

102.   As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, bodily injury, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits. These damages have occurred in the past, are permanent and continuing. Plaintiff is entitled to injunctive/equitable relief.

## COUNT VI
## DISABILITY DISCRIMINATION UNDER THE ADA

103.   Paragraphs 1 through 50 are realleged and incorporated herein by reference.

104.   This is an action against Defendant for disability discrimination brought under 42 U.S.C. §12101 et seq.  This is a disparate treatment claim.

105.   Plaintiff has been the victim of discrimination on the basis of her disability or perceived disability. During the course of Plaintiff's employment with Defendant, she was treated differently than similarly situated nondisabled/perceived-as-disabled employees.

106.   Defendant is liable for the differential treatment of Plaintiff which adversely affected the terms and conditions of Plaintiff's employment with Defendant. Defendant controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.

107.   In essence, the actions of agents of Defendant, which were each condoned and ratified by Defendant, were disability/perceived-disability based and in violation of the laws set forth herein.

108.   The discrimination complained of herein affected a term, condition, or privilege of Plaintiff's continued employment with Defendant. The events set forth herein lead, at least in part, to Plaintiff's termination.

109.   Defendant's conduct and omissions constitutes intentional discrimination and unlawful employment practices based upon disability or

perceived disability or his record of having an impairment under 42 U.S.C. §12101 et seq.

110.    As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, bodily injury, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits. These damages have occurred in the past, are permanent and continuing. Plaintiff is entitled to injunctive/equitable relief.

## COUNT VII
## RETALIATION – CHAPTER 760

111.    Paragraphs 1 through 50 are realleged and incorporated herein by reference.

112.    Defendant is an employer as that term is used under the applicable statutes referenced above.

113.    The foregoing allegations establish a cause of action for unlawful retaliation after Plaintiff reported or opposed unlawful employment practices adversely affecting her.

114.    The foregoing unlawful actions by Defendant were purposeful.

28

115.   Plaintiff voiced opposition to unlawful employment practices during her employment with Defendant and was the victim of retaliation thereafter, as related in part above.

116.   Plaintiff is a member of a protected class because she reported unlawful employment practices and was the victim of retaliation thereafter. There is thus a causal connection between the reporting of the unlawful employment practices and the adverse employment action taken thereafter.

117.   As a direct and proximate result of the foregoing unlawful acts and omissions, Plaintiff has suffered mental anguish, emotional distress, expense, loss of benefits, embarrassment, humiliation, damage to reputation, illness, lost wages, loss of capacity for the enjoyment of life, and other tangible and intangible damages. These damages are continuing and are permanent. Plaintiff is entitled to injunctive relief.

## COUNT VIII
### RETALIATION UNDER 42 U.S.C. §2000e et seq.

118.   Paragraphs 1 through 50 are re-alleged incorporated herein by reference.

119.   This is an action against Defendant for unlawful retaliation after Plaintiff reported unlawful employment practices adversely affecting her under 42 U.S.C. § 2000e et seq.

120.   Defendant is an employer as that term is used under the applicable statutes referenced above.

121.   The foregoing unlawful actions by Defendant were purposeful.

122.   Plaintiff voiced opposition to unlawful employment practices during her employment with Defendant and has been the victim of retaliation thereafter.

123.   The events set forth herein have led, at least in part, to adverse actions against Plaintiff.

124.   Plaintiff is a member of a protected class because she reported unlawful employment practices and has been the victim of retaliation thereafter.  There is thus a causal connection between the reporting of the unlawful employment practices and the adverse employment action taken thereafter.

125.   As a direct and proximate result of the foregoing unlawful acts and omissions, Plaintiff has suffered mental anguish, emotional distress, expense, loss of benefits, embarrassment, humiliation, damage to reputation, illness, lost wages, lost opportunities, loss of capacity for the enjoyment of life, and other tangible and intangible damages.  These damages are continuing and are permanent.  Plaintiff is entitled to injunctive/equitable relief.

## COUNT IX
## RETALIATION UNDER THE ADA

126.   Paragraphs 1 through 50 are re-alleged incorporated herein by reference.

127. This is an action against Defendant for unlawful retaliation after Plaintiff reported unlawful employment practices adversely affecting her under 42 U.S.C. §12101 et seq.

128. Defendant is an employer as that term is used under the applicable statutes referenced above.

129. The foregoing unlawful actions by Defendant were purposeful.

130. Plaintiff voiced opposition to unlawful employment practices during her employment with Defendant and has been the victim of retaliation thereafter.

131. The events set forth herein have led, at least in part, to adverse actions against Plaintiff.

132. Plaintiff is a member of a protected class because she reported unlawful employment practices and has been the victim of retaliation thereafter. There is thus a causal connection between the reporting of the unlawful employment practices and the adverse employment action taken thereafter.

133. As a direct and proximate result of the foregoing unlawful acts and omissions, Plaintiff has suffered mental anguish, emotional distress, expense, loss of benefits, embarrassment, humiliation, damage to reputation, illness, lost wages, lost opportunities, loss of capacity for the enjoyment of life, and other tangible and intangible damages. These damages are continuing and are permanent. Plaintiff is entitled to injunctive/equitable relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendant for the following:

(a)    that process issue and this Court take jurisdiction over this case;

(b)    that this Court grant equitable relief against Defendant under the applicable counts set forth above, mandating Defendant's obedience to the laws enumerated herein and providing other equitable relief to Plaintiff;

(c)    enter judgment against Defendant and for Plaintiff awarding all legally-available general and compensatory damages and economic loss to Plaintiff from Defendant for Defendant's violations of law enumerated herein;

(d)    enter judgment against Defendant and for Plaintiff permanently enjoining Defendant from future violations of law enumerated herein;

(e)    enter judgment against Defendant and for Plaintiff awarding Plaintiff attorney's fees and costs;

(f)    award Plaintiff interest where appropriate; and

(g)    grant such other further relief as being just and proper under the circumstances, including but not limited to reinstatement.

32

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury on all issues herein that are so triable.

DATED this 6th day of May 2026.

Respectfully submitted,


/s/ Marie A. Mattox
Marie A. Mattox [FBN 0739685]
MARIE A. MATTOX, P. A.
203 North Gadsden Street
Tallahassee, FL 32303
Telephone: (850) 383-4800
Facsimile: (850) 383-4801
Marie@mattoxlaw.com
Secondary emails:
marlene@mattoxlaw.com


ATTORNEYS FOR PLAINTIFF

33